UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ETHEL BRUNET,** *et al.*                                    **CIVIL ACTION**

**VERSUS**                                                    **No. 07-3618**

**ALCON LABORATORIES, INC.,** *et al.*                        **SECTION: I/1**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendants, Alcon Laboratories, Inc., and Alcon Manufacturing, Ltd., (collectively, "Alcon").[1] For the following reasons, Alcon's motion for summary judgment is **GRANTED**.

### *BACKGROUND*

On July 13, 2006, Ethel Brunet ("Mrs. Brunet"), had cataract removal surgery on her left eye; Dr. J. Bruce Steigner, M.D., ("Dr. Steigner") performed the surgery using a process called phacoemulsification.[2] Phacoemulsification is "a method of cataract extraction in which the lens is fragmented by ultrasonic vibrations and simultaneously irrigated and

---

[1] R. Doc. No. 36.

[2] R. Doc. No. 36-4, Alcon's statement of undisputed material facts ¶ 1 [hereinafter, "SOF"]; R. Doc. No. 37-3, pls.' resp. to Alcon's SOF ¶ 1.

aspirated." *Dorland's Illustrated Medical Dictionary* 1270 (28th ed. 1994).  Dr. Steigner used an Alcon Infiniti Vision System ("Alcon Infiniti") to perform the phacoemulsification on Mrs. Brunet.[3]

Three of the four sections of cataract were removed with the Alcon Infiniti.[4]  Dr. Steigner was unable to use the Alcon Infiniti to remove the final fragment because the machine was "spitting" fluid and lense fragments and it would not aspirate; he removed the remaining fragment manually.[5]  Following the surgery, Mrs. Brunet suffered a loss of vision in her left eye due to corneal clouding caused by damage to the endothelial cells lining the cornea.[6]

On July 5, 2007, plaintiffs, Mrs. Brunet and her husband, Kirvie Brunet, filed a complaint asserting claims against Alcon pursuant to the Louisiana Products Liability Act ("LPLA").[7]  Plaintiffs allege that the Alcon Infiniti is unreasonably dangerous in construction or composition, unreasonably dangerous in design, and failed to conform to implied and express warranties.[8]  Plaintiffs also allege that Alcon failed to adequately warn of dangers and failed to adequately instruct in the use and maintenance of the product.[9]

On March 24, 2008, Alcon filed this motion for summary judgment arguing that plaintiffs

---

[3] R. Doc. No. 1, compl. ¶ 3; SOF ¶ 4; resp. SOF ¶ 4.

[4] SOF ¶ 7; resp. SOF ¶ 7.

[5] R. Doc. No. 36-6, Steigner dep. at 51-52; SOF ¶ 7; resp. SOF ¶ 7.

[6] SOF ¶ 8; resp. SOF ¶ 8.

[7] Compl. ¶ 5.

[8] *Id.*

[9] *Id.*  Plaintiffs amended their complaint on October 25, 2007.  R. Doc. No. 15.  The amended complaint does not materially change the facts alleged in the complaint and the amendment has no bearing on the Court's decision on this motion.

failed to present a genuine issue of material fact with respect to each of their LPLA claims.[10] Plaintiffs argue that, because Dr. Steigner testified that the Alcon Infiniti "failed in normal use," Alcon's motion should be denied.[11]

## *LAW AND ANALYSIS*

**I.      Standard of Law**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c).[12] The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the

---

[10] R. Doc. No. 36-5, mem. supp. mot. summ. j.

[11] R. Doc. No. 37, mem. opp'n to mot. summ. j.

[12] The *Federal Rules of Civil Procedure*, including Rule 56, were amended on December 1, 2007, in order to make the rules "more easily understood and to make style and terminology consistent throughout." Fed. R. Civ. P. 56 advisory committee's note (2007 Amendment). The changes "are intended to be stylistic only," rather than substantive. *Id.*

other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."  *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

**II.    Discussion**

*Louisiana Products Liability Act*

Pursuant to the LPLA, there are four exclusive theories of recovery against manufacturers for damage arising from their products.  La. Rev. Stat. Ann. § 9:2800.52 (1997) ("This Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products."); *Jack v. Alberto-Culver USA, Inc.*, 949 So. 2d 1256, 1258 (La. 2007); *see Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 203 (5th Cir. 2001).  "To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements:  (1) that the

defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous;' and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Jack*, 949 So. 2d at 1258; *see* La. Rev. Stat. § 9:2800.54(A);[13] *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002). A product is unreasonably dangerous "if and only if" the product is unreasonably dangerous due to one of the following: (1) construction or composition as provided in La. Rev. Stat. Ann. § 9:2800.55, (2) design as provided in § 9:2800.56, (3) an inadequate warning as provided in § 9:2800.57, or (4) nonconformity with an express warranty of the manufacturer about the product as provided in § 9:2800.58. La. Rev. Stat. Ann. § 9:2800.54(B); *Jack*, 949 So. 2d at 1258; *see Stahl*, 283 F.3d at 261. The plaintiff has the burden of proving these elements. La. Rev. Stat. Ann. § 9:2800.54(D); *Jack*, 949 So. 2d at 1258.

*1.     Unreasonably Dangerous Construction or Composition*

In addition to the elements listed above, "[t]o prevail on a manufacturing defect claim under Louisiana law, the plaintiff must show that when the product left the manufacturer's control, it 'deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.'" *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 933 (5th Cir. 2006)

---

[13] Section 9:2800.54(A) states:
> The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.

(*quoting* La. Rev. Stat. Ann. § 9:2800.55).  A presumption of the existence of a product defect is not allowed merely because an accident occurs.  *Jaeger v. Auto. Cas. Ins. Co.*, 682 So. 2d 292, 298 (La. Ct. App. 1996).

Alcon argues that plaintiffs have failed to offer any evidence that the product deviated in a material way from its specifications at the time the Alcon Infiniti left its control.[14]  Further, Alcon presents evidence that, on July 19, 2006, Hayden Tucker, an Alcon field service technician, completed a field service report during his set up of the Alcon Infiniti and he did not find any aspect of the machine's operations to be outside of Alcon's specifications.[15]  The machine was returned to service and it has been in use since Mrs. Brunet's surgery without any further incident.[16]

Plaintiffs contend that because Dr. Steigner's testimony establishes that the Alcon Infiniti "failed in normal use, causing the damage" to Mrs. Brunet's eye, Alcon's motion should be denied.[17]  However, plaintiffs have failed to provide any evidence that suggests that the Alcon Infiniti in use during Mrs. Brunet's cataract surgery deviated in any way from other Alcon Infinitis, an essential element of a manufacturing defect claim under the LPLA.  Therefore, plaintiffs have failed to raise a genuine issue of material fact on this claim.  *See, e.g.*, *Grenier*, 243 F.3d at 205 (upholding the district court's dismissal because "the record is devoid of proof regarding defective design or construction"); *Jenkins v. Int'l Paper Co.*, 945 So. 2d 144, 150 (La.

---

[14] Mem. supp. at 10-11.

[15] R. Doc. No. 36-8, Tucker dep. at 90; SOF ¶ 10; resp. SOF ¶ 10.

[16] SOF ¶ 11; resp. SOF ¶ 11.

[17] Mem. opp'n.

Ct. App. 2006) (dismissing defective construction claims because there was no evidence that the product was not manufactured according to the manufacturer's specifications or performance standards for similar products made by the manufacturer).

*2.     Unreasonably Dangerous in Design*

In order to prevail on an unreasonably dangerous design claim, a claimant must "prove that: (1) '[t]here existed an alternative design for the product that was capable of preventing the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.'" *Gomez*, 442 F.3d at 930 (*quoting* La. Rev. Stat. Ann. § 9:2800.56).

Alcon contends that the design of the Alcon Infiniti was not unreasonably dangerous and that plaintiffs have failed to produce any evidence of an alternative design capable of preventing Mrs. Brunet's damages.[18] Plaintiffs do not respond to this argument, and the Court has found no evidence in the record that would suggest plaintiffs have proof of this element. Therefore, plaintiffs defective design claim fails as they provide no factual support for their claim and, therefore, no genuine issue of material fact exists. *See, e.g.*, *Theriot v. Danek Med., Inc.*, 168 F.3d 253, 256 (5th Cir. 1999) (finding that a failure to produce evidence of an alternative design was fatal to plaintiff's claim); *Ortolano v. BDI Mktg.*, 930 So. 2d 192, 195 (La. Ct. app. 2006) (holding that summary judgment was proper because plaintiff failed to provide any evidence that the product was unreasonably dangerous in design and failed to show that an alternative design existed).

---

[18] Mem. supp. at 12-16.

*3.     Unreasonably Dangerous for Failure To Warn*

"To maintain a failure-to-warn claim, a plaintiff must demonstrate that 'the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.'" *Stahl*, 283 F.3d at 261 (*quoting* La. Rev. Stat. Ann. § 9:2800.57). "A 'mere allegation of inadequacy' in insufficient for a plaintiff to survive summary judgment on a failure-to-warn claim. [Plaintiff] must 'go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial' to defeat summary judgment." *Id.* at 264-65 (*quoting Anderson v. McNeilab, Inc.*, 831 F.2d 92, 93 (5th Cir. 1987); *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citation omitted)).

Alcon argues that plaintiffs cannot establish that the Alcon Infiniti was unreasonably dangerous for failure to adequately warn because plaintiffs present no evidence that the instructions were inadequate.[19] Plaintiffs do not respond to this argument. The Court has found no evidence in the record that would suggest that the warnings were inadequate. Therefore, plaintiffs have failed to provide evidence showing a genuine issue of material fact exists with respect to their LPLA failure to warn claim. *See, e.g.*, *Jack*, 949 So. 2d at 1259 (dismissing plaintiff's failure to warn claim because she presented no factual evidence to satisfy her burden of proof).

---

[19] *Id.* at 16-18.

*4.     Unreasonably Dangerous for Failure To Conform with an Express Warranty*

"[T]o survive summary judgment, a plaintiff is required to demonstrate, or provide evidence to create a genuine issue of material fact regarding the following:  (1) the manufacturer made an express warranty[20] regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002) (*citing* La. Rev. Stat. Ann. § 9:2800.58).

Alcon contends that plaintiffs have provided no proof that an express warranty existed or that such a warranty induced the use of the product.[21]  Plaintiffs again fail to respond to this argument.  There is no evidence in the record suggesting that an express warranty was made, that it induced the use of the Alcon Infiniti, or that, if made, it was untrue.  Therefore, there is no genuine issue of material fact with respect to plaintiffs' final LPLA claim.  *See, e.g.*, *Ortolano*, 930 So. 2d at 196 (holding that summary judgment was proper because the plaintiff provided no evidence that the manufacturer provided any express warranty about the product).

Accordingly,

---

[20] The LPLA defines "express warranty" as:
> [A] representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance.  "Express warranty" does not mean a general opinion about or general praise of a product.  A sample or model of a product is an express warranty.

La. Rev. Stat. Ann. § 9:2800.53(6).

[21] Mem. supp. at 18-19.

-9-

**IT IS ORDERED** that defendants' motion for summary judgment[22] is **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned case is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, April 16, 2008.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[22] R. Doc. No. 36.